Filed 7/24/25 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MORRIS S. GETZELS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE STATE BAR OF CALIFORNIA,<br><br>    Defendant and Respondent. | B338089<br><br>Los Angeles County<br>Super. Ct. No.<br>23STCV18632<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:*

The court has read and considered the petition for rehearing filed by appellant Morris S. Getzels on July 11, 2025.

The opinion filed on June 26, 2025, in the above-entitled matter is ordered MODIFIED as follows:

Footnote 12 on pages 12–13, "Getzels also cites *Allied Structural Steel Co. v. Spannaus* (1978) 438 U.S. 234, to argue his equal protection challenge is subject to strict scrutiny review

because rule 2.30 violates the Contract Clause of the federal Constitution.  Getzels has forfeited this argument.  (*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 130, fn. 2 ["New arguments may not be raised for the first time in an appellant's reply brief"].)  Further, his citation to *Spannaus* is unpersuasive, as the case did not concern an equal protection challenge or strict scrutiny review.  (See *Spannaus*, *supra*, 438 U.S. at pp. 236, 244–245; see also *California Grocers Ass'n. v. City of Long Beach* (C.D. Cal. 2021) 521 F.Supp.3d 902, 914. ["alleged Contract Clause violations committed in the exercise of a municipality's police power are subject to analysis under their own separate framework, which does *not* automatically assume that strict scrutiny applies"].)" shall be replaced with "To the extent Getzels also cites *Allied Structural Steel Co. v. Spannaus* (1978) 438 U.S. 234, to argue rule 2.30 is invalid because it violates the Contract Clause of the federal Constitution, he has forfeited this argument.  (*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 130, fn. 2 ["New arguments may not be raised for the first time in an appellant's reply brief"].)  Further, his citation to *Spannaus* to argue his challenge is subject to strict scrutiny review is unpersuasive, as the case did not concern an equal protection challenge or strict scrutiny review.  (See *Spannaus*, *supra*, 438 U.S. at pp. 236, 244–245; see also *California Grocers Ass'n. v. City of Long Beach* (C.D. Cal. 2021) 521 F.Supp.3d 902, 914. ["alleged Contract Clause violations committed in the exercise of a municipality's police power are subject to analysis under their own separate framework, which does *not* automatically assume that strict scrutiny applies"].)"

The petition for rehearing in all other aspects is DENIED. There is no change in the judgment.

*ZUKIN, P. J.       MORI, J.       J. DAUM.**

---

**      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

Filed 6/26/25 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MORRIS S. GETZELS, | B338089 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCV18632) |
| v. | |
| THE STATE BAR OF CALIFORNIA, | |
| Defendant and Respondent. | |

_____

APPEAL from a judgment of the Superior Court of Los Angeles County, Jill T. Feeney, Judge.  Affirmed.

Steiner & Libo and Leonard Steiner, for Plaintiff and Appellant.

Office of the General Counsel of the State Bar of California, Ellin Davtyan, Kirsten R. Galler, Lisa Jacobs, and Suzanne C. Grandt, for Defendant and Respondent.

_____

Plaintiff Morris S. Getzels, an attorney and licensee of defendant the State Bar of California (the State Bar), appeals from a judgment of dismissal following an order sustaining the

State Bar's demurrer without leave to amend.  Getzels challenges the constitutional validity of State Bar Rule 2.30 (rule 2.30), subdivisions (B) and (C).  Rule 2.30 precludes the State Bar's inactive licensees from acting as private arbitrators and mediators.  Getzels argues the rule violates the Equal Protection Clauses of the federal and California Constitutions by treating inactive licensees differently from everyone else in "the entire world."  Getzels contends the rule's disparate treatment of inactive licensees is subject to strict scrutiny because the rule impinges on a fundamental liberty, "freedom of contract." Alternatively, he contends there is no rational basis for the rule.

We conclude Getzels's equal protection challenge is subject to rational basis review, and a rational basis exists for any disparate treatment of inactive licensees in rule 2.30.  The judgment of dismissal is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.    The State Bar

The State Bar is a public corporation established by the California Constitution.  (Cal. Const., art. VI, § 9.)  It serves as an administrative arm of the California Supreme Court for purposes of attorney regulation and discipline.  (*In re Attorney Discipline System* (1998) 19 Cal.4th 582, 599–600; see *In re Rose* (2000) 22 Cal.4th 430, 438 ["The State Bar is a constitutional entity, placed within the judicial article of the California Constitution, and thus expressly acknowledged as an integral part of the judicial function"].)  Under the State Bar Act (Stats. 1927, ch. 34, codified at Bus. & Prof. Code, § 6000, et seq.), the State Bar may "formulate and declare rules and regulations" necessary for carrying out its responsibilities.  (Bus. & Prof. Code, § 6025.)

2

Article VI, section 9 of the California Constitution states: "Every person admitted and licensed to practice law in this State is and shall be a member of the State Bar except while holding office as a judge of a court of record." Members of the State Bar are its "licensees." (See Bus. & Prof. Code, § 6002.) Licensees are divided into two classes: active and inactive. (*Id.* at § 6003.) Different annual license fees are fixed by the State Bar for each, with the inactive fee being lower. (*Id.* at §§ 6140, 6141.) All licensees are active until they request to be or are involuntarily enrolled as inactive. (*Id.* at § 6004.)

**B.     State Bar Rule 2.30**

Inactive license status was formerly governed by Article 1, Section 2 of the Rules and Regulations of the State Bar. It provided in part: "No member of the State Bar . . . occupying a position wherein he or she is called upon to give legal advice or counsel or examine the law or pass upon the legal effect of any act, document or law, shall be enrolled as an inactive member."

In January 2005, the State Bar proposed amending the former rule to clarify that licensees acting as private arbitrators and mediators had to be active licensees. A staff report prepared for the State Bar board in 2005 (the 2005 Staff Report) explained that the annual fee paid by active licensees was based "largely on the cost of administering the State Bar's regulatory system." The report stated that because inactive licensees "ceased to associate with the practice of law," they were unlikely to invoke the regulatory jurisdiction of the State Bar, and this warranted a discounted annual license fee. Article 1, Section 2 required inactive licensees to "distance themselves from the practice of law

3

and not burden the State Bar's regulatory system," as they no longer shared in its cost.

The 2005 Staff Report observed that attorneys that serve as private arbitrators and mediators did not distance themselves from the legal profession. The parties that hired them called upon them to do what Article 1, Section 2 prohibited: "'give legal advice or counsel', or 'examine the law or pass upon the legal effect of any act, document or law.'" Indeed, private arbitrators and mediators often advertised their "attorney status" as a benefit, "emphasizing that legal skills enhance the process." Because they engaged in conduct so closely related to the practice of law, there was a "likelihood of complaints to the State Bar's discipline office" or "other demands on the State Bar's regulatory jurisdiction." The report concluded bar members who serve as arbitrators or mediators should be required to pay the active membership fee, as they are still engaged in conduct associated with, as opposed to distanced from, the practice of law.

The State Bar board approved the proposed amendments to the former rule. The rule was amended to read: "No member of the State Bar . . . occupying a position wherein he or she is called upon *in any capacity* to give legal advice or counsel or examine the law or pass upon the legal effect of any act, document or law shall be enrolled as an inactive member." (Italics added to highlight changes.) Thereafter, former Article 1, Section 2 was transferred to rule 2.30. Minor edits, such as replacing the word "member" with "licensee," were made to the rule in 2007 and 2019.

At the time Getzels filed his complaint in August 2023, rule 2.30 stated:

"(A) Any licensee not under suspension, who does not engage in any of the activities listed in (B) in California, may, upon written request, be enrolled as an inactive licensee. The Secretary may, in any case in which to do otherwise would work an injustice and subject to any direction of the board permit retroactive enrollment of inactive licensees.[1]

"(B) No licensee practicing law, or occupying a position in the employ of or rendering any legal service for an active licensee, or occupying a position wherein he or she is called upon in any capacity to give legal advice or counsel or examine the law or pass upon the legal effect of any act, document or law, shall be enrolled as an inactive licensee.

"(C) Notwithstanding (A) and (B) a licensee serving for a court or any other governmental agency as a referee, hearing officer, court commissioner, temporary judge, arbitrator, mediator or in another similar capacity is eligible for enrollment as an inactive licensee if he or she does not otherwise engage in any of the activities listed in (B) or hold himself or herself out as being entitled to practice law."

(Fn. omitted.)

The State Bar's instructions for its Application for Transfer to Inactive Status state an inactive licensee is precluded from "engaging in certain activities in California including, but not limited to, working as a private arbitrator, mediator, referee or

---

[1]  The second sentence of subdivision (A) was amended effective September 2023, as follows: "The State Bar may, in any case in which to do otherwise would work an injustice, permit retroactive enrollment of inactive licensees." No modifications were made to subdivisions (B) and (C).

other dispute resolution provider . . . where the licensee will be called upon to give legal advice or counsel or examine the law or pass upon the legal effect of any act, document or law."[2]

## C.     Getzels's Complaint

Getzels's complaint asserted claims for declaratory and injunctive relief.  He sought an order declaring as unconstitutional, and permanently enjoining the State Bar from enforcing, rule 2.30, subdivisions (B) and (C).

Getzels alleged he is 72 years old and an active licensee of the State Bar.  He has served as an arbitrator and mediator for various persons and entities for more than 25 years.  He retired from the practice of law in November 2022 but wishes to continue serving indefinitely as an arbitrator and mediator in California.  However, he alleged that because of rule 2.30, subdivisions (B) and (C), he is required to maintain his status as an active licensee, pay the active annual license fee, and complete the required number of hours of mandatory minimum continuing legal education.

---

[2]     We previously granted, in part, Getzels's request for judicial notice and took judicial notice of the State Bar's instructions for its Application for Transfer to Inactive Status.  In his opening and reply brief, respectively, Getzels further requests we take judicial notice of the amount Financial Industry Regulatory Authority arbitrators are paid and that there are thousands of contracts entered into that require arbitration or mediation of disputes.  The requests are denied.  Getzels failed to comply with California Rules of Court, rule 8.252.  (*In re Marriage of Tamir* (2021) 72 Cal.App.5th 1068, 1075, fn. 2; see also *Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 855 [denial of request for judicial notice "is particularly appropriate where judicial notice has been requested in support of a reply brief to which the opposing party has no opportunity to respond"].)

Getzels alleged the operative effect of rule 2.30 is to preclude inactive licensees from acting as arbitrators and mediators in California, except as provided in subdivision (C). He asserted there are no other classifications of persons prohibited from acting as private arbitrators and mediators. He further asserted that there is no rational basis for prohibiting inactive licensees from serving in these capacities, and therefore, rule 2.30 violates the equal protection rights of inactive licensees under the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the California Constitution.

## D. The State Bar's Demurrer and Trial Court's Ruling

The State Bar demurred to Getzels's complaint, arguing his equal protection claim failed as a matter of law because there was a legitimate state interest in rule 2.30's restriction on the conduct of inactive licensees, who are still within the State Bar's jurisdiction and subject to discipline for misconduct. The State Bar concurrently filed a request for judicial notice of various documents and reports concerning rule 2.30's adoption, including the 2005 Staff Report. Getzels opposed the demurrer and filed objections to the State Bar's request for judicial notice, and the State Bar filed replies to the opposition and objections.

The trial court granted the State Bar's request for judicial notice of the documents it submitted. It noted the parties did not dispute that rational basis review was the appropriate standard for Getzels's equal protection claim. It then found that funding the State Bar's regulatory functions was a legitimate government purpose, and requiring licensees to pay the active license fee was related to this purpose. The court concluded the State Bar

7

sufficiently articulated a rational basis for the disparate treatment of inactive licensees from other individuals serving as private arbitrators and mediators.  It sustained the demurrer without leave to amend.

Getzels timely appealed from the ensuing judgment of dismissal.

## DISCUSSION

Getzels argues that rule 2.30 violates equal protection under the federal and California Constitutions by precluding inactive licensees from acting as private arbitrators and mediators in California while all other persons, such as active and nonlicensees, are permitted to serve in such capacities. Getzels contends strict scrutiny applies to his equal protection claim and rule 2.30 does not meet this standard.  Alternatively, he argues that rule 2.30 fails rational basis review.  We conclude Getzels's equal protection claim is subject to rational basis review and that rule 2.30 has a rational basis.

## A.    Demurrer Standard of Review

We review an order sustaining a demurrer without leave to amend de novo.  (*United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821, 829.)  "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  When a demurrer is sustained without leave to amend, "we decide whether there is a

8

reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)

## B.    Equal Protection Principles

The Fourteenth Amendment to the United States Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., 14th Amend.) "This provision is 'essentially a direction that all persons similarly situated should be treated alike.'" (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).) The California Constitution likewise prohibits the denial of equal protection. (Cal. Const., art. I, § 7, subd. (a).)[3] "At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288.)

Traditionally, California courts engaged in a two-part inquiry to determine if there has been an equal protection violation. (*Cole v. Superior Court* (2024) 104 Cal.App.5th 1280, 1289.) The threshold question was whether a classification affected two or more groups "'similarly situated in all material respects'" in an unequal manner. (*Ibid.*) In *Hardin*, our Supreme

---

[3]    In addressing Getzels's equal protection claim, we consider decisions of the United States Supreme Court and other federal courts as persuasive authority because the equal protection provision of the California Constitution is "'substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution.'" (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571.)

9

Court held that courts no longer needed to ask this threshold question when the challenged classification appears on the face of the law. (*Hardin*, *supra*, 15 Cal.5th at pp. 849–850; *Cole*, at p. 1289.) The pertinent inquiry in such a case is "whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Id.* at pp. 850–851.)

Here, rule 2.30 identifies inactive licensees as a class that may not have a position where they are called upon to give legal advice, examine the law, or pass upon the legal effect of an act, document, or law. (*Cole*, *supra*, 104 Cal.App.5th at p. 1290.) Neither the State Bar nor Getzels makes any argument concerning whether inactive licensees are similarly situated in all material respects to those who are not impacted by rule 2.30. Both address their arguments to whether the treatment of inactive licensees is adequately justified under the applicable standard of review, as set forth in *Hardin*. We therefore begin by addressing the appropriate standard to analyze Getzels's claim.

## C.     **Rational Basis Review Applies**

Getzels argues that strict scrutiny review applies to his challenge to rule 2.30, subdivisions (B) and (C) because the rule "impairs the freedom of contract liberty rights of disputants and litigants to choose whomever they want to arbitrate or mediate their disputes."[4] He asserts "the freedom of contract liberty" is a

---

[4]     Getzels raises this argument, which the State Bar contends has been forfeited, for the first time on appeal. Because Getzels's claim involves a facial constitutional challenge presenting a pure question of law, and because the parties have fully briefed and argued the issue, we will consider it on the merits. (See *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1323 [appellate courts have discretion to address constitutional issues raised on appeal, particularly where issue

fundamental right guaranteed under the Fourteenth Amendment to the United States Constitution.  We are not persuaded.

The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue. (*Hardin*, *supra*, 15 Cal.5th at p. 847.)  Courts apply strict scrutiny when a challenged statute or regulation involves a suspect class, such as one based upon race, or a fundamental right, such as the right to vote.  (*Ibid.*)  "'"Under the strict standard applied in such cases, *the state* bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose."'"  (*Warden v. State Bar* (1999) 21 Cal.4th 628, 641 (*Warden*).)

"But when a statute involves neither a suspect classification nor a fundamental right, the 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'"  (*Hardin*, *supra*, 15 Cal.5th at p. 847.)  This standard—rational basis review—"'is the basic and conventional standard for reviewing economic and social welfare legislation in which there is a "discrimination" or differentiation of treatment between classes or individuals.'"  (*Warden*, *supra*, 21 Cal.4th at p. 641.)  It is traditionally applied in cases examining equal protection claims involving regulations governing professional licensing and conduct, including in the legal

---

presented is a pure question of law]; see also *Cardona v. Soto* (2024) 105 Cal.App.5th 141, 149 [application of forfeiture rule is not automatic, and an appellate court may exercise its discretion to consider merits of a constitutional challenge].)

profession.  (*Id.* at pp. 642–643, citing *Bib'le v. Committee of Bar Examiners* (1980) 26 Cal.3d 548, 555.)

In contending "the freedom of contract" is a fundamental right and strict scrutiny applies to his claim, Getzels relies on overruled and repudiated case law.  (See e.g., *Lochner v. New York* (1905) 198 U.S. 45, overruling recognized in *Ferguson v. Skrupa* (1963) 372 U.S. 726, 729–730; *Allgeyer v. State of La.* (1897) 165 U.S. 578, repudiated as noted in *Lincoln Fed. Labor Union v. Northwestern Iron & Metal Co.* (1949) 335 U.S. 525, 535–536.)  More recently, the United States Supreme Court has held "'that freedom of contract is a qualified, and not an absolute, right.  There is no absolute freedom to do as one wills or to contract as one chooses.'"  (*West Coast Hotel Co. v. Parrish* (1937) 300 U.S. 379, 392 (*West Coast Hotel*).)  Indeed, "[t]he Constitution does not speak of freedom of contract."  (*Id.* at p. 391; see *San Antonio Independent School Dist. v. Rodriguez* (1973) 411 U.S. 1, 17 [Strict scrutiny is reserved for cases involving laws that operate to disadvantage suspect classes or interfere with the exercise of fundamental rights explicitly or implicitly protected by the Constitution].)

Other cases Getzels cites to support his argument merely recognize that parties to an arbitration agreement may designate the neutral they wish to arbitrate their disputes.  (See e.g., *Bunker Hill Part Ltd. v. U.S. Bank National Assn.* (2014) 231 Cal.App.4th 1315, 1326; *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1059–1060.)  These cases do not address or establish whether the freedom to contract, or the right to select a particular arbitrator, is a fundamental constitutional right.[5]

---

[5]     Getzels also cites *Allied Structural Steel Co. v. Spannaus* (1978) 438 U.S. 234, to argue his equal protection challenge is subject to strict

12

(*Cal. Bldg. Industry Assn. v. State Water Resources Control Bd.*
(2018) 4 Cal.5th 1032, 1043 ["It is axiomatic that cases are not
authority for propositions that are not considered"].)

In sum, Getzels does not show that rule 2.30 involves a
suspect class or interferes with a fundamental constitutional
right. Thus, the rational basis test governs our consideration of
Getzels's equal protection claim, which concerns the regulation of
professional conduct.[6] (*Hardin, supra*, 15 Cal.5th at p. 847;
*Warden, supra*, 21 Cal.4th at pp. 642–643.) We must therefore
determine whether rule 2.30's classification bears a rational
relationship to a legitimate state purpose.

---

scrutiny review because rule 2.30 violates the Contract Clause of the
federal Constitution. Getzels has forfeited this argument. (*High
Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102,
130, fn. 2 ["New arguments may not be raised for the first time in an
appellant's reply brief"].) Further, his citation to *Spannaus* is
unpersuasive, as the case did not concern an equal protection challenge
or strict scrutiny review. (See *Spannaus, supra*, 438 U.S. at pp. 236,
244–245; see also *California Grocers Ass'n. v. City of Long Beach* (C.D.
Cal. 2021) 521 F.Supp.3d 902, 914. ["alleged Contract Clause violations
committed in the exercise of a municipality's police power are subject
to analysis under their own separate framework, which does *not*
automatically assume that strict scrutiny applies"].)

[6] Although Getzels's complaint also alleges that rule 2.30 is
discriminatory "in that it overwhelmingly negatively affects senior
citizens," he does not raise any arguments concerning this allegation
on appeal. In any event, "'age is not a suspect classification under the
Equal Protection Clause.'" (*Perez v. County of Monterey* (2019) 32
Cal.App.5th 257, 264.) A law that allegedly discriminates based on age
is reviewed for a rational basis. (*Ibid.*; *Kimel v. Florida Bd. of Regents*
(2000) 528 U.S. 62, 83 ["States may discriminate on the basis of age
without offending the Fourteenth Amendment if the age classification
in question is rationally related to a legitimate state interest"].)

**D.  Rule 2.30 Withstands Rational Basis Review**

Getzels argues there is no rational basis for prohibiting inactive licensees from acting as private arbitrators and mediators when "the rest of the world other than inactive licensees" are permitted to do so.  We disagree.

"Rational basis review 'sets a high bar' for litigants challenging legislative enactments."  (*Hardin*, *supra*, 318 Cal.5th at p. 852.)  The burden of demonstrating the invalidity of a classification under rational basis review "rests squarely upon *the party who assails it*."  (*Warden*, *supra*, 21 Cal.4th at p. 641.)  "Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.'"  (*Hardin*, at p. 852; *F.C.C. v. Beach Communications, Inc.* (1993) 508 U.S. 307, 314–315 [law being challenged is given "a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it"].)

"A legislative 'choice is not subject to courtroom factfinding *and may be based on rational speculation unsupported by evidence or empirical data*.'"  (*Kimco Staffing Services, Inc. v. State of California* (2015) 236 Cal.App.4th 875, 885 (*Kimco Staffing*).)  "'If a plausible basis exists for the disparity, courts may not second-guess its "'wisdom, fairness, or logic.'"'"  (*Hardin*, *supra*, 318 Cal.5th at p. 852.)  Rational basis review ""requir[es] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose." [Citation.]'"  (*Warden*, *supra*, 21 Cal.4th at p. 641.)  "'[W]e will not overturn such [government action] unless the varying treatment

14

of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.'" (*Kimel v. Florida Bd. of Regents*, *supra*, 528 U.S. at p. 84.)

California has a legitimate interest in maintaining a competent bar and assuring the professional conduct of licensees. (See *Hirsh v. Justices of Supreme Court of State of Cal.* (9th Cir. 1995) 67 F.3d 708, 712–713 ["California's attorney disciplinary proceedings implicate important state interests" because "[t]he State . . . has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses"].) Rule 2.30's distinction between licensees who engage in conduct considered closely related to the practice of law and those who distance themselves from such conduct bears a rational relationship to the goal of assuring the professional conduct of licensees.

The State Bar could rationally conclude that an inactive licensee "occupying a position wherein he or she is called upon in any capacity to give legal advice or counsel or examine the law or pass upon the legal effect of any act, document or law" (rule 2.30, subd. (B)) would burden its regulatory system. The 2005 Staff Report noted that inactive licensees performing private arbitration and mediation services were likely to generate demand on the State Bar's regulatory jurisdiction, even if their conduct did not constitute the practice of law per se.[7] The State Bar could receive complaints about attorneys serving as arbitrators or mediators and would need to assess and respond to

---

[7] Getzels does not challenge on appeal the trial court's ruling granting the State Bar's request for judicial notice of the documents and reports it filed in support of its demurrer.

15

them.  Getzels does not dispute that inactive licensees remain subject to the State Bar's jurisdiction and to discipline for misconduct.  It is rational to conclude that licensees who act as private arbitrators and mediators should be required to continue paying active annual licensee fees, whereas those who have distanced themselves from the practice of law should not.[8]

Furthermore, there is a rational basis for rule 2.30's disparate treatment of inactive licensees compared to nonlicensees who may work as private arbitrators or mediators. Arbitrators and mediators who are not licensees are not subject to the State Bar's jurisdiction.  Nonlicensees therefore would not burden the State Bar's regulatory system and cause the State Bar to incur costs.  (See *In re Nguyen* (2024) 107 Cal.App.5th 15, 24 ["equal protection does not mean 'that different things must be treated as though they are the same'"].)

Getzels cites *City of Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432 (*Cleburne*), in arguing that the State Bar's "unsubstantiated fears" that licensees who perform private arbitration and mediation services might burden its regulatory jurisdiction are insufficient to satisfy rational basis review.  In *Cleburne*, the United States Supreme Court declared that a city zoning ordinance that required a special use permit for a group home for persons with mental disabilities, but not for other types of group homes and multiple-dwelling facilities, violated the

---

[8]    Getzels does not identify any equal protection issues specific to the classification in subdivision (C) of rule 2.30.  The State Bar notes that the Code of Judicial Ethics applies to temporary judges, referees, and court-appointed arbitrators.  (Code of Jud. Ethics, Canon 6D.) Violations of the Code of Judicial Ethics are handled by the Commission on Judicial Performance and the superior court, rather than the State Bar.

Equal Protection Clause.  (*Id.* at p. 448.)  The record did not reveal *any* rational basis for believing that the group home would pose a special threat to the city's legitimate interests, and the court rejected all the city's justifications for the law.  (*Ibid.*)  The court concluded the ordinance was based on an irrational prejudice against persons with mental disabilities, not a legitimate state interest.  (*Id.* at pp. 448–450.)

While a "more searching form of rational basis review" was used in *Cleburne*, the United States Supreme Court has "generally reserved this form of review for cases in which the sole motivation underlying the enactment is baseless prejudice against a politically unpopular group."  (*Hardin*, *supra*, 318 Cal.5th at p. 852, fn. 3.)  In this case, Getzels does not argue that the State Bar was motivated by such a prejudice.  The State Bar was motivated by concerns that complaints about licensees might burden its regulatory system, and such concerns need not be empirically substantiated.  (*Kimco Staffing*, *supra*, 236 Cal.App.4th at p. 885; *Hardin*, at p. 852.)

We conclude that rule 2.30 does not violate the Equal Protection Clauses of the federal or state constitutions.  Getzels's complaint fails to state a claim as a matter of law.  As Getzels makes no argument as to how he could amend the complaint to state a cause of action, we discern no error in the trial court sustaining the demurrer without leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed.  The State Bar is awarded costs on appeal.


MORI, J.

We concur:


ZUKIN, P. J.


DAUM, J.**

---

** Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

18